# Affolter *versus* May.

1. A testator directed that his farm be divided into four equal parts and devised one part to each of his four daughters, naming them. He fur- ther devised, "that the property devised to my daughters do at their death all and singular go to my daughters' children. *Held*, that each daughter took one of the four parts in severalty for life and her chil- dren took the remainder.

2. The word, "children" in a will is a word of purchase, and while it may be used by a testator to signify "heirs of the body" it will not be held to have been so used, unless the testator has also employed the words "heirs of the body" or "issue" as descriptive of the same ob- jects. The fact that the remaindermen are the same persons as would have inherited the estate is not indicative of the testator's purpose that they should not take as purchasers.

November 16th, 1886. Before GORDON, PAXSON, TRUNK- EY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., ab- sent.

[Affolter *v.* May.]

ERROR to the Court of Common Pleas No. 2, of *Allegheny county :* Of October Term, 1886, No. 254.

This was a case stated wherein Elizabeth May was plaintiff and Stephen Affolter was defendant.

The following is the case stated as filed :

And now, to wit, September 30th, 1886, it is hereby agreed by and between the parties to the above suit that the following case be stated for the opinion of the court in the matter of a special verdict :

That plaintiff, Elizabeth May, is the daughter of John Graham, who by his last will and testament made disposition of his estate as follows, viz :

"1.   I give and bequeath to my beloved wife, Martha Graham, all my real estate and all my movable property, together with all goods and chattels as they now exist, as long as she remains the widow of said John Graham.

"2.   I do further devise that the farm I now live in be divided in four equal parts, dividing it from east to west, and that my beloved daughter Elizabeth have the first choice, and my beloved daughter Mary, now Mary Hilliard, have the second, and that my beloved daughter Catharine, now Catharine Boggs, have the third, and that my beloved daughter Martha, now Martha Bruce, have the fourth choice.

"3.   I do further devise that the property devised to my daughters do, at their death, all and singular go to my daughters' children.

4.   I do further bequeath to my beloved grandchild Eliza Jane Hilliard eight hundred dollars, to be paid after she is of age in yearly instalments of fifty dollars, by each of the heirs, providing the said Eliza Jane remains with her during her grandmother's lifetime.

The widow, Martha Graham, is now dead, and after her death proceedings for partition, according to the terms of said will, were instituted in the Orphans' Court of Allegheny county by Mary Hilliard and Martha Bruce, two of the daughters of John Graham, deceased ; the parties to which proceedings were Mary Hilliard, Martha Bruce, Elizabeth May, three of the said daughters of John Graham, deceased, and the husband and children of Catharine Boggs, deceased, the other daughter of John Graham, deceased.

That under said proceedings in partition the following described property was allotted in severalty to the said Elizabeth May (*née* Graham), the plaintiff in this case, and she has since been in possession thereof, viz.:

All that certain purparts or tract of land situate in Ross township, Allegheny county, Pennsylvania, bounded and de-

[Affolter v. May.]

scribed as follows (here follows the description). And the said Elizabeth May is now in possession of the same.

That on the 10th day of August, A. D. 1886, the said Elizabeth May, the plaintiff, sold by articles of agreement, under her hand and seal, the said tract or purpart of land to Stephen Affolter, for the gross sum of forty three hundred and fifty dollars for the entire tract; the said amount to be paid cash on presentation or delivery of the said deed. That said premises were to be conveyed by said Elizabeth May to said Stephen Affolter by deed of general warranty, free of encumbrances and in fee simple.

That said Elizabeth May, on the 19th day of August, A. D. 1886, made and executed a deed in fee simple with general warranty, free of encumbrances of said purpart or tract of land to said Stephen Affolter, and on the same day tendered the said deed to him, said Stephen Affolter, and demanded the purchase money for the same in accordance with the terms of the said agreement of sale. That Stephen Affolter refused to accept said deed or conveyance of said premises or to pay said consideration for the same under said agreement, alleging as the only reason, that under the terms and conditions of the last will and testament of John Graham, said Elizabeth May, the plaintiff, could not convey to him, said Stephen Affolter, a title to said land in fee simple, and that she had nothing more than a life estate in the said land.

That said Elizabeth May is a widow and has children, viz.: Jennie Cochrand, Kate G. Gardner, Mary E. Siemon and Joseph May.

The other daughters of John Graham, deceased, were married and certain of them have children living.

If the court be of opinion that under the terms and conditions of the last will and testament of John Graham, deceased, the said Elizabeth May took a fee simple title to the land hereinbefore described and set off to her under the said partition proceedings, then judgment to be entered against said defendant, Stephen Affolter, and in favor of said Elizabeth May in the sum of forty three hundred and fifty dollars; and if not, then judgment to be entered for the defendant. The costs to follow the judgment and either party reserving the right to sue out a writ of error as in other cases.

And now, 21st October, 1886, a majority of the court being of the opinion that the case is with the plaintiff, judgment is entered on the case stated in favor of the plaintiff and against the defendant, for the sum of forty three hundred and fifty dollars ($4,350), with costs of suit.

The defendant thereupon took this writ assigning for error the judgment of the court.

[Affolter v. May.]

*Walter Lyon* for plaintiff in error.—The word " children " in a will is a word of purchase unless the intention of the testator to use it as a word of limitation clearly appears from the use of the words by the testator himself. Conjecture, doubt or even equilibrium of apparent intention will not suffice: Guthrie's Appeal, 1 Wright, 9 ; Haldeman v. Haldeman, 4 Wright, 29 ; Walker v. Milligan, 9 Id., 178 ; Huber's Appeal, 80 Pa. St., 348 ; Robins v. Quinliven, 79 Id., 333 ; Carroll v. Burns, 12 Outerbridge 386.

*Fitzsimmons*, (*Robb* with him), for defendant in error.—Under the terms of the first clause of the will a devise in fee simple was intended to each daughter of an equal part of the land : Miller v. Lynn, 7 Barr, 447 ; Winchester v. Tilghman, 1 Harr. & McH., 452.

In the third clause of the will he expressly provides " that the property devised to my daughters *do, at their death,* all and " singular go to my daughters' children." Could there be a clearer definition made by a testator as to his intention in the use of any phrase in his will? This clearly defines his intention to use the word children as synonymous with heirs, and by express terms to vest a fee simple in his daughters, and the apparent devise to the daughters of his children as a restraint of alienation. Could an intent to restrain alienation be more clearly expressed? Appeal of Cockins & Harper, 1 Amerman, 29 ; Williams v. Leech, 4 Casey, 89 ; Haldeman v. Haldeman, 4 Wr., 34.

Again, under the third clause of the will the word children may be treated as describing lineal succession to an entail. It is true there are no words indicating a devise over in default of issue or children in the first takers. There is no provision in case of a failure of issue of the first takers, but we submit that this should make no difference in this case. If the testator intended to create an entailed estate, or if, under a fair construction of the will, an estate tail was created, then, under the Act of April 27, 1855, this estate must be construed as a fee simple in the first takers : Hayes' Elementary Essay, p. 35 ; Smith on Ex. Int., 537 ; Haldeman v. Haldeman, 4 Wright, 35 ; Carroll v. Burns, 15 W. N. C., 553 ; Williams v. Leech, 4 Casey, 89 ; Criswell's Appeal, 5 Wr., 288 ; Steiner v. Kolf, 7 P. F. S., 123 ; Doebler's Appeal, 14 P. F. S., 9 : Stewart v. Knower, 7 W. &. S., 288 ; Guthrie's Appeal, 1 Wr., 1.

Mr. Justice TRUNKEY delivered the opinion of the court, January 3d, 1887.

The testator directed that his farm be divided into four equal parts, and devised one part to each of his daughters, Elizabeth,

[Affolter *v.* May.]

Mary, Catharine and Martha.   He further devised, "that the property devised to my daughters, do at their death, all and singular, go to my daughters' children."

The words of the second and third clauses in the will, in either their ordinary or technical sense, vest in the daughters a life estate, and in their children the remainder in fee.   These clauses must be taken together; the meaning is plain, the property shall be divided, each daughter shall take a part in severalty for life, and her children take the remainder.   The devise to the children is absolute, without clog, or condition, or provision in case of death of a daughter without having had a child.

In Guthrie's Appeal, 37 Pa. St., 9, the principles applicable to the construction of this will are fully discussed, and it was said that children is as certainly a word of purchase as "heirs of the body" are words of limitation, and that it is as difficult to elevate the word children into a word of limitation, as it is to convert "heirs of the body" into words of personal description.   And Justice Strong further remarked:   "It is not denied, that the word children may be used by a testator as a *nomen collectivum,* signifying "heirs of the body" but I have found no case in which it has been held to have been so used, unless the testator has also employed the words "heirs of the body," or "issue," as descriptive of the same objects.   Nothing less appears to be sufficient to repel the presumption that the testator did not intend a limitation by the use of this word of purchase."   The fact that the remainder-men were the same persons as would have inherited the estate, was said not to be indicative of the testator's purpose that they should not take as purchasers.

The fourth clause in the will is a conditional bequest of eight hundred dollars by the testator to his grandchild, to be paid in yearly instalments by each of his heirs; and the fifth provides that if any of his heirs endeavor to break his will by litigation they shall forfeit all claim to their inheritance.   It is justly urged by the defendant in error that the word heirs in the fourth clause means the same persons as daughters in the first.   The testator calls his daughters heirs instead of devisees, and calls the devise an inheritance.   That is all that can be adduced to show that the word children is not used in its true sense.   No circumstance without the will tends to show that any word should have a particular meaning with reference to persons or property.   Were there anything in the contention that if the daughters should pay a large legacy to the grandchild, it evidences intent that they should take the devise in fee, it does not appear that the legacy was large in relation to the value of the life estate.

The words " heirs of the body," or " issue," are not in this will, nor is there any other word or phrase, relating to the devises, of like meaning. Where the word " heirs " is used it simply means the testator's daughters, and does not touch the estate devised to them. The heirs are directed to pay the legacy ; that legacy is not charged on real estate, and the entire clause is without reference to any previous or subsequent devise. In view of the whole will, the word " children " must be taken in its proper sense, and signifies the persons entitled to the remainder.

> Judgment reversed, and upon the case stated judgment is now rendered for defendant.